IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| ex. rel. RAMESH GIJDUR | § | |
| | § | |
| Plaintiff and Plaintiff-Relator, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-00-1169 |
| | § | |
| TEXAS DEPARTMENT OF HEALTH | § | |
| ET AL., | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**PLAINTIFF-RELATOR′S**
**OPPOSITION TO DEFENDANT DELOITTE CONSULTING LLP'S**
**MOTION FOR PROTECTIVE ORDER**

Michael W. Kerensky
State Bar No. 11331500
The Kerensky Law Firm
5300 Memorial, Suite 950
Houston, Texas 77007
Telephone:  (713) 522-8686
Facsimile:  (713) 522-6925

ATTORNEYS FOR PLAINTIFF-RELATOR

## <u>TABLE OF CONTENTS</u>

**PLAINTIFF-RELATOR'S INTERROGATORY REQUESTS WERE TIMELY AND PROPER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

       **1.**    **Plaintiff-Relator's Interrogatory Requests Were Timely** . . . . . . . . . . . . . . . . **2**

       **2.**    **Plaintiff-Relator's Interrogatories are Proper as Drafted** . . . . . . . . . . . . . . . **8**

            **a.**    **The January 6, 2006 Interrogatories Were Not Propounded in Disregard of the Court's Order Entered of February 1, 2006** . . . . . . . **8**

            **b.**    **The Interrogatories Do Not Seek Information Outside the Scope of Discovery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

            **c.**    **The Interrogatories Are Not Vague, Ambiguous or Unduly Burdensome** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

            **d.**    **The Interrogatories do not Exceed the Number Permitted** . . . . . . . . **11**

**PLAINTIFF-RELATOR'S REQUESTS FOR ADMISSIONS WERE TIMELY AND PROPER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

       **1.**    **Plaintiff-Relator's Requests for Admission are timely** . . . . . . . . . . . . . . . . . . **13**

       **2.**    **Plaintiff-Relator's Requests for Admissions Are Not Unduly Burdensome** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

       **3.**    **Plaintiff-Relator's Requests for Admissions Do Not Seek Improper Information** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

      **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>                                                           <u>**Page**</u>

*Audio Enterprises, Inc. v. B & W Loudspeakers of America,*
    **957 F.2d 406 (7th Cir. 1992)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*Bujnicki v. American Paving & Excavating,*
    **2004 WL1071736 *9 (W.D.N.Y. 2004)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

*Ga. Ports Auth. v. Harris,*
    **274 Ga. 146, 150 549 S.E.2d 95 (2001)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*In re Carney,*
    **258 F.3d 415 (5th Cir. 2001)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

*Jackson v. Geometrica,*
    **2006 WL 213860 * 3 (M.D.Fla. 2005)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

*Magnuson  v. Video Yesteryear*
    **85 F.3d 1424 (9th Cir. 1996)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*Moscowitz v. Baird,*
    **10 F.R.D. 233 (S.D.N.Y. 1950)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

*New Orleans Auction Galleries, Inc. v. Ross,*
    **2005 WL 712456 *3 n.11(E.D.La. 2005)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*Omega Engineering, Inc. v. Omega S. A.,*
    **2001 WL 173765 *5 (D.Conn. 2001)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

*Photon v. Harris Intertype, Inc.,*
    **28 F.R.D. 327 (D. Mass. 1961)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

*Prince v. Poulos,*
    **876 F.2d 30, 32 n.1 (5th Cir. 1989)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*Puricelli v. Houston,*
    **2000 WL 298922 *6 (E.D.Pa. 2000)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

*Resolution Trust Corp. v. Holmes,*
    **846 F. Supp. 1310 (S.D. Tex. 1994)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*Rohany v. State of New York*,
144 Misc.2d, 940, 545 N.Y.S.2d 513 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Salley v. Board of Governors*,
136 F.R.D. 417, 420 (M.D.N.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Transco Leasing Corp. v. U.S.*,
992 F.2d 552 (5th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States Postal Serv. v. O'Brien*,
644 F. Supp. 140 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Varda v. General Motors Corp.*,
242 Wis.2d 756, 626 N.W.2d 346 (Wis. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Western Resources Inc v. Union Pacific Railroad Co.*,
2002 WL 1822432 (D.Kan. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*White v. US. Catholic Conference*,
1998 WL 429842 *6,(D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12


## <u>RULES</u>

127 F.R.D. 258, 302 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

134 F.R.D. 579, 631 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Fed. R. Civ. P . 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Fed. R. Civ. P. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Fed. R. Civ. P. 5, 1 F.R.D. LXXVII (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 5(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 77(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Fed.R.Civ.P. 33(a)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

**Fed.R.Civ.P. 5(2)(A) (ii)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**Fed.R.Civ.P. 5(b)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3, 5-7**

**Fed.R.Civ.P. 5(b)(1)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**Fed.R.Civ.P. 5(b)(2)(D)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

**Fed.R.Civ.P. 59** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**Fed.R.Civ.P. 6(b)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**Fed.R.Civ.P. 6(e)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2, 4, 7**

## STATUTES

**18 U.S.C. §§ 1693-99 (1988)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-5-**

**39 C.F.R. § 320.6 (1993) (effective 1979)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-5-**

**39 U.S.C. §§ 601-606 (1988)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-5-**

## MISC

**Webster's New International Dictionary 1483 (2d ed. 1934)** . . . . . . . . . . . . . . . . . . . . . . . . **-5-**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| ex. rel. RAMESH GIJDUR | § | |
| | § | |
| Plaintiff and Plaintiff-Relator, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-00-1169 |
| | § | |
| TEXAS DEPARTMENT OF HEALTH | § | |
| ET AL., | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**PLAINTIFF-RELATOR'S
OPPOSITION TO DEFENDANT DELOITTE CONSULTING LLP'S
MOTION FOR PROTECTIVE ORDER**

COMES NOW, RAMESH GUDUR, Plaintiff-Relator and files this Opposition to Defendant

Deloitte Consulting LLP's Motion for Protective Order and in support thereof would show unto the

court the following:

SUMMARY OF ARGUMENT

Plaintiff-Relator's Interrogatories and Requests for Admission to Defendant Deloitte &

Touche, LLP which were hand delivered to the office of Deloitte's attorney-in-charge more than 30

days prior to the end of discovery are timely and proper. They are neither burdensome nor

oppressive and within the limits authorized by the Federal Rules of Civil Procedure and prior

precedent. They are not vague, ambiguous, or "nonsensical." They do not seek information beyond

the permissible scope of discovery, and the information they seek is not beyond the ability of

Deloitte to supply. Accordingly, each of Deloitte's objections to Plaintiff-Relator's Interrogatories

and Requests for Admission should be denied, and Deloitte should be directed to respond fully to

this discovery.

-1-

**PLAINTIFF-RELATOR'S INTERROGATORY REQUESTS WERE TIMELY AND PROPER.**

> **1.      Plaintiff-Relator's Interrogatory Requests Were Timely.**

On January 6, 2006, 32 days prior to the Court's February 6, 2006 discovery cutoff date, Plaintiff-Relator had UPS hand-deliver Plaintiff-Relator's Interrogatories to the office of Defendant Deloitte Consulting's designated attorney-in-charge, Joseph R. Knight of Baker Botts LLP.  In doing so Plaintiff-Relator satisfied the express provisions of Fed.R.Civ.P. 5(b)(1) and (2)(A) (ii) which provide:

> (b)      Making Service

> (1)      Service under Rules 5(a) and 77(d) on a party represented by an attorney is made on the attorney unless the court orders service on the party.

> (2)      Service under Rule 5(a) is made by:

> (A)      Delivering a copy to the person served by:  ...

> (ii)      leaving it at the person's office with a clerk or other person in charge, or if no one is in charge leaving it in a conspicuous place in the office.

Because Plaintiff-Relator's interrogatories were hand-delivered to the office of Deloitte's attorney-in charge, Deloitte's answers were due 30 days later on February 5, 2006 which was a Sunday thus extending Deloitte's time to respond to February 6, 2006, the last day of the discovery period.  Despite the fact that Plaintiff-Relator's interrogatories were not mailed but were rather hand-delivered by a UPS messenger, Deloitte nevertheless argues that it is entitled to an extra three days pursuant to Fed.R.Civ.P. 6(e) because UPS is a form of mail.[1] Deloitte's position is contrary to the

---

[1]  In seeking to bolster its argument Deloitte disingenuously argues that Plaintiff-Relator only served its local counsel and that its trial counsel did not receive the interrogatories until January 9, 2006. This argument is disingenuous for several reasons. First, Plaintiff-Relator served Deloitte's designated attorney-in-charge and had no further obligation to serve other attorneys on the Deloitte team. Second, the reason that Deloitte's trial counsel received the interrogatories late is entirely the fault of Deloitte's attorney-in-charge who chose not to fax or overnight the documents to his co-counsel but rather chose to use some less expeditious form of mailing such as three-day delivery.

express holdings of the Fifth Circuit and other courts that have addressed this issue.

At least three circuit courts including the Fifth Circuit have held that delivery by an overnight courier service such as UPS or FedEx is not mail. See e.g. *Prince v. Poulos,* 876 F.2d 30, 32 n.1 (5th Cir. 1989); *Magnuson  v. Video Yesteryear*, 85 F.3d 1424, 1431 (9th Cir. 1996); *Audio Enterprises, Inc. v. B & W Loudspeakers of America*, 957 F.2d 406 (7th Cir. 1992).  See also *Transco Leasing Corp. v. U.S.*, 992 F.2d 552, 554 n.2(5th Cir.1993). The Fifth Circuit in particular has cautioned attorneys that overnight couriers like UPS and FedEx are not mail and therefore counsel should not seek (as Deloitte does) to rely on provisions applicable solely to United States mail to save them from a time related issue when documents are delivered by UPS or FedEx.  *Id*.

Deloitte seeks to mislead this Court into error by concealing the Fifth Circuit's rejection of the Deloitte position by citing cases from outside this circuit and then citing the Ninth Circuit's *Magnuson* case (which also rejects Deloitte's position) for the principle that there is a "degree of uncertainty" as to whether service by FedEx satisfies the requirements of service by mail under Fed.R.Civ.P. 5(b). In doing so, Deloitte fails to cite the relevant Fifth Circuit decisions and similarly fails to draw this Courts's attention to the fact that the *Magnuson* case cited Fifth Circuit precedent as an example of  precedents that reject the view espoused by Deloitte.

Numerous other courts, including this one, have followed the lead of the Fifth Circuit in rejecting the Deloitte position. For example, in *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310 (S.D. Tex. 1994) the court held that service by FedEx was a form of personal service and not a form of mail.  In the *Holmes* case, the Plaintiff sought relief pursuant to Fed.R.Civ.P. 59, which provides that a party may move the court to alter or amend a judgment, but the motion must be served on the opposing party within ten days of the entry of the judgment.  Exactly ten days after judgment was entered, the plaintiff sent a Rule 59 motion to the defendant via FedEx. Delivery was made the next

day, but the court characterized it as personal service, making it one day late.

Other jurisdictions have also rejected Deloitte's argument and expressly held that delivery by an overnight courier is a form of personal delivery (which does not qualify for additional time under Fed.R.Civ.P. 6(e)). *See e.g., Western Resources Inc v. Union Pacific Railroad Co.*, 2002 WL 1822432 (D.Kan. 2002) (where court held that FedEx satisfied analogous delivery requirement of Fed.R.Civ.P. 45); *Ga. Ports Auth. v. Harris*, 274 Ga. 146, 150 549 S.E.2d 95 (2001) (where the Georgia Supreme Court expressly held that FedEx can be agent for effecting personal delivery); *Rohany v. State of New York*,144 Misc.2d, 940, 545 N.Y.S.2d 513 (1989) (where court expressly held that FedEx delivery was the equivalent of personal delivery) and *Varda v. General Motors Corp.*, 242 Wis.2d 756, 626 N.W.2d 346 (Wis. App. 2001) (where court construed very similar if not identical language in Wisconsin statute to be satisfied because FedEx delivery satisfied requirement of "delivering a copy" to a "clerk or other person in charge" of a party's office).

Deloitte resorts to policy arguments and misplaced logic in an attempt to convince this Court that service by a UPS messenger should either qualify as mail or a form of "delivering a copy by any other means, including electronic means, consented to in writing by the person served" so as to qualify for additional time under Fed.R.Civ.P. 6(e). Deloitte's argument has been expressly rejected by at least one other court in this circuit. *See e. g. New Orleans Auction Galleries, Inc. v. Ross*, 2005 WL 712456 *3 n.11(E.D.La. 2005) where the court held that FedEx did not qualify under Fed.R.Civ.P. 5(b)(2)(D) as a form of "any other means" agreed to by written consent. Moreover, Deloitte has not and cannot identify any form of written consent that would allow it to satisfy the second prong of Fed.R.Civ.P. 5(b)(2)(D) required to qualify for additional time pursuant to Fed.R.Civ.P. 6(e).

A close look at the wording and history of Rule 5(b) reveals that Deloitte's policy arguments are wrong, and private delivery should be characterized as personal service. When Rule 5(b) was promulgated in 1938, there was only one way to send mail: through the United States Post Office. Private delivery of first-class mail was, and generally still is, subject to criminal punishment under the Private Express Statutes, 18 U.S.C. §§ 1693-99 (1988); 39 U.S.C. §§ 601-606 (1988). See generally, *United States Postal Serv. v. O'Brien*, 644 F. Supp. 140 (D.D.C. 1986) (action against defendant who privately delivered mail to Congressional offices). The modern private express delivery of documents did not arise until 1979, with the issuance of the urgent letter exception to the Private Express Statutes, 39 C.F.R. § 320.6 (1993) (effective 1979). Under this exception, private parties can deliver letters if (1) delivery is completed within certain time restrictions and the value of the material would be lost or greatly diminished if it were not delivered within those periods; or (2) the charge is twice the normal first-class rate, including Priority Mail. *Id*; see also *O'Brien*, 644 F. Supp. at 142. A 1934 dictionary definition of mail was consistent with the earlier state of affairs: "[t]he bag, or bags, with the letters, papers, or other matter contained therein, conveyed under public authority from one post office to another." Webster's New International Dictionary 1483 (2d ed. 1934). In sum, private delivery is not mail as it was originally understood in Rule 5(b), and Congress has done nothing to change the wording or definition since that time. Compare original Fed. R. Civ. P. 5, 1 F.R.D. LXXVII (1941) with current Fed. R. Civ. P . 5(b).

In the words of one court, "[T]here is no indication that the drafters of Rule 5(b) contemplated service by mail to be other than by the United States Postal Service. . . ." *Salley v. Board of Governors*, 136 F.R.D. 417, 420 (M.D.N.C. 1991) (holding that a facsimile transmission is not mail under Rule 5).

Personal delivery, on the other hand, is defined broadly enough in Rule 5 to include most instances of private express delivery. Proper methods of delivery include "[h]anding [the document] to the attorney or to the party; or leaving it at the attorney's or party's office with a clerk or other person in charge thereof, or if no one is in charge, leaving it in a conspicuous place therein." Private delivery drivers make their deliveries in a manner consistent with this language. Additional evidence for treating private delivery as personal service can be found in the proposed amendments and notes of the Advisory Committee on the Rules of Practice and Procedure. An amendment proposed in 1989 would have expanded the mailing provision in Rule 5(b) to include "mail or other equally reliable means. "Advisory Committee on the Rules of Practice and Procedure of the Judicial Conference of the United States, Proposed Amendments to the Federal Rules of Civil Procedure, 127 F.R.D. 258, 302 (1989). The proposed amendment read, "[S]ervice ... shall be made by delivering a copy to the attorney or party or by transmitting it to the attorney or party at the attorney's or party's last known address by mail or other equally reliable means." *Id.* This phrase was meant to encompass "private messenger services" and electronic communication, according to notes accompanying an identical proposal to amend Rule 4's provisions concerning service of process by mail. *Id.* at 288. However, Congress never accepted the amendments. See current versions of Fed. R. Civ. P . 4 & 5. These proposed changes imply that the Advisory Committee did not consider mail in Rule 5(b) to encompass private delivery.

The 1991 amendment to Rule 5, which requires the certificate of service to be filed with the court, (Advisory Committee on the Rules of Practice and Procedure of the Judicial Conference of the United States, Proposed Amendments to the Federal Rules of Civil Procedure, 134 F.R.D. 579, 631 (1991)) provides further evidence that the Advisory Committee does not view private express delivery as service by mail. According to the committee, one of the reasons for requiring the

certificate of service to be filed is to provide parties employing "private delivery services" with records in case they are unable to specify the "date of delivery." *Id.* If the committee had considered private express services to be mail, it would have used phrases such as "private mail services" and "date of mailing."

An additional reason for characterizing private express delivery as personal service is the operation of the timing provisions in Rule 5 and Rule 6. Personal delivery is not complete until actual service, but service by mail is deemed complete upon mailing. See Fed. R. Civ. P . 5(b). To equalize the time to respond, three days are added to any response period when service is by mail. Fed. R. Civ. P. 6(e). The special rules for service by mail are required because of the uncertainty inherent in normal postal service. If service by mail were not deemed complete upon delivery, many attorneys would be reluctant to use it for fear of delays. And since the United States Postal Service generally does not maintain records for first-class mail, there would be constant questions over the date of actual service. Personal delivery does not implicate such questions because the record keeping of private couriers makes it easy to pinpoint the date of service. Some companies make computerized records of every stage of their deliveries, to the point of allowing customers to track the progress of their package or letter. Also, the reliability of these companies in making timely deliveries renders it unnecessary to deem service complete upon dispatch.

In light of the above, it is clear that Plaintiff-Relator's use of a UPS messenger to deliver its interrogatories qualifies as a form of personal delivery under the delivery provisions of 5(b)(2)(A) and was thus timely. Moreover, it is clear that Plaintiff-Relator's counsel was operating under this belief or else he would have included a copy of the interrogatories in the package containing Plaintiff-Relator's Requests for Admissions that was hand delivered by another messenger service on February 6, 2006 to the offices of Deloitte's counsel and whose delivery status is not contested

by Deloitte. Thus, in the event that this Court chooses to adopt the position advocated by Deloitte, Plaintiff-Relator would request that this Court nevertheless use its discretion pursuant to Fed.R.Civ.P. 6(b) to enlarge the time for Plaintiff-Relator to secure answers to its legitimate discovery requests. In so doing the Plaintiff-Relator would note that in light of this Court's recent Order extending the time to take the depositions of key witnesses and to file dispositive motions there is no prejudice to Deloitte in having to respond to interrogatories that it has now had in its possession for nearly two months.

### 2. Plaintiff-Relator's Interrogatories are Proper as Drafted

In section 2 of its objections, Deloitte asserts that it should be exempt from answering certain of Plaintiff-Relator's interrogatories because they are allegedly "improper as drafted." Deloitte raises several arguments in support of its "improper as drafted" argument, each of which is demonstrably spurious.

### a. The January 6, 2006 Interrogatories Were Not Propounded in Disregard of the Court's Order Entered of February 1, 2006

Deloitte would have this Court to believe that Plaintiff-Relator filed his Interrogatories in violation of the Court's Order entered February 1, 2006. However, given that Plaintiff-Relator's Interrogatories were served on January 6, 2006, it is clear that these Interrogatories were filed and served almost four weeks prior to the Court's Order. In its February 1, 2006 Order, this Court stated that Deloitte would only have to produce information about the SHARS program and not about the closely related MAC program. Deloitte therefore asserts that because the Interrogatories filed prior to the Court's Order seek information about the SHARS and MAC programs, that it should not have to respond at all to the Plaintiff-Relator's discovery requests.

As is apparent, this Court did not grant Deloitte an exemption from responding to discovery regarding the SHARS program by virtue of its February 1, 2006 Order. Nonetheless, by falsely asserting that Plaintiff-Relator "disregarded" the Court's Order, Deloitte seeks to mislead the Court into depriving Plaintiff-Relator of access to information about the SHARS program to which this Court has recognized Plaintiff-Relator is entitled.

Additionally, although the Court did limit the scope of discovery so as to carve out Plaintiff-Relator's allegations regarding the MAC program, it is nonetheless appropriate in the context of a case raising only SHARS claims to require discovery regarding Deloitte's activities in the MAC program. This is true because: 1) it would be a violation of the SHARS program to create SHARS rates that duplicated costs already reimbursed under MAC; 2) the MAC time studies contain SHARS related information[2/] that is inconsistent with the data utilized by Deloitte to calculate the SHARS rates; 3) the MAC time studies contain critical data that expose the improper accounting schemes utilized by Deloitte to create the SHARS data; 4) Deloitte's own documents confirm the possibility that the SHARS rules will result in the duplication of costs in the MAC program. Therefore, to the extent the Court's February 1, 2006 Order can be read to prevent inquiry into the MAC related activities of Deloitte, Plaintiff-Relator respectfully submits that it is unduly restrictive and erroneous because the restriction denies Plaintiff-Relator discovery on a key element of his SHARS related claims.

**b.      The Interrogatories Do Not Seek Information Outside the Scope of Discovery.**

Deloitte argues that by seeking information about the actual cost to deliver SHARS services, Plaintiff-Relator is seeking information about damages and not liability issues. This argument is

---

[2/]   At the same time that it was arguing that a time study was too complicated and burdensome to conduct on the SHARS program, Deloitte and its clients participated in MAC time studies, and the same personnel filled out MAC time study forms inconsistent with their SHARS time survey forms.

baseless. Deloitte was retained to calculate cost based SHARS rates. It is Plaintiff-Relator's contention that Deloitte manipulated the data of its school district clients and other SHARS providers to generate SHARS rates that far exceeded the actual cost of providing the services. It is obviously both relevant and critical to Plaintiff-Relator's case to obtain information about the actual costs of providing SHARS services which would demonstrate the disparity between Deloitte's "cost based rates" and the actual costs of those services. It is thus relevant to determine whether the reported SHARS costs utilized by Deloitte are in accord with the costs reported by those providers in other contexts. Given the Plaintiff-Relator 's allegation that in calculating the SHARS rates Deloitte improperly failed to distinguish between the cost of higher cost contractors and lower cost school personnel to deliver SHARS services, it is of course relevant to issue the liability and not damages (as falsely claimed by Deloitte) to determine "any differential in cost to provide SHARS services utilizing contractors and the cost to provide SHARS services and utilizing employees" (Interrogatory 7).  It is similarly relevant why, when the SHARs rates were re-based in 1999 five years after Deloitte calculated the SHARS rates, the State of Texas was required to dramatically lower its SHARS rates after collecting costs from a group of SHARs providers consisting of a number of the same providers utilized by Deloitte. Deloitte's actions represent a further effort to unfairly use the bifurcated discovery process to deprive Plaintiff-Relator of information to which he is entitled under the discovery rules by improperly classifying information as relating to damages and not liability issues.  Yet another example of Deloitte's attempt to deprive Plaintiff-Relator of discoverable information is Deloitte's refusal to produce any documents that post-date December 1, 1995 even though the contested SHARS rates were in effect until at least 1999. Deloitte's actions countermand the express instructions of Judge Werlein in bifurcating the discovery process and should not be allowed to continue.

### c.   The Interrogatories Are Not Vague, Ambiguous or Unduly Burdensome.

Deloitte asserts that because Plaintiff-Relator has made no attempt to define any of the terms contained in the Interrogatories, certain of the Interrogatories are vague or ambiguous. However, none of the words contained in the Interrogatories are intended to be read in any manner other than the clear, common meaning of the words utilized. Thus, no definition is required. While asserting an inability to comprehend what Plaintiff-Relator is requesting in Interrogatories 4, 6, and 17, Deloitte nonetheless appropriately groups phrases such as "ensure, review or verify the accuracy of" in a manner that demonstrates it does have a proper grasp of the question being posed sufficient for it to formulate an answer to the Interrogatory.

Plaintiff-Relator's Interrogatories, rather than being vague or ambiguous, are in fact direct and comprehensive. Plaintiff-Relator is entitled under the Federal Rules to have his proper discovery requests answered as fully and completely as possible. Deloitte should be compelled to answer these Interrogatories.

### d.   The Interrogatories do not Exceed the Number Permitted.

Plaintiff-Relator has propounded 24 Interrogatories to Deloitte yet Deloitte assets that the number of Interrogatories "likely" exceed the 25 permitted under the Rules." Given the many subparts Deloitte itself propounded in interrogatories to Plaintiff-Relator, which this Court required Plaintiff-Relator to answer despite his view that Deloitte's interrogatories were "broad," (see Docket No. 576), it flies in the face of this Court's prior Orders for Deloitte to assert now that Plaintiff-Relator's Interrogatories exceed the permissible number of interrogatories permitted by the Federal Rules. Deloitte has wholly failed to demonstrate that the number of interrogatories exceed the permissible number. The example chosen by Deloitte on its face demonstrates the lack of merit to Deloitte's objection regarding the number of interrogatories. It is certainly permissibly for Plaintiff-

Relator to inquire as to the affirmative defenses a defendant intends to raise. Should the defendant have one or ten affirmative defenses in response to one interrogatory requesting information regarding the asserted affirmative defenses, there remains only one question being asked.

Deloitte's position has been repeatedly rejected by courts faced with similar objections. *See e.g. Puricelli v. Houston*, 2000 WL 298922 *6 (E.D.Pa. 2000)(where court rejected defense complaints about burden, harassment vagueness etc. and ordered defendants to answer a <u>single</u> interrogatory that requested for each denial of a paragraph in the complaint a host of information and all documents on which the denial was premised); *Jackson v. Geometrica*, 2006 WL 213860 * 3 (M.D.Fla. 2005) (court ordered defendants to answer a <u>single</u> interrogatory that requested the defendant to describe in detail the factual basis on which each of its affirmative defenses was premised); *Omega Engineering, Inc. v. Omega S. A.*, 2001 WL 173765 *5 (D.Conn. 2001)(court ordered defendants to answer a <u>single</u> interrogatory that requested the defendant to describe in detail the factual basis on which each of its affirmative defenses was premised); *White v. US. Catholic Conference*, 1998 WL 429842 *6,(D.D.C. 1998)(court ordered defendants to answer a <u>single</u> interrogatory that requested the defendant to describe in detail the factual basis on which each of its affirmative defenses was premised). Furthermore, even in the one case where the court appeared to agree with the defense argument that an interrogatory requesting information about all affirmative defenses should be viewed as consisting of discrete subparts, the court nevertheless rejected the defense's arguments about undue burden and compelled an answer pursuant to the court's discretion to allow more interrogatories under Fed.R.Civ.P. 33(a) because the court held that it was not improper to require a party to explain the facts that underlie its affirmative defenses. *Bujnicki v. American Paving & Excavating*, 2004 WL1071736 *9 (W.D.N.Y. 2004). In light of the above, Deloitte should in all respects be ordered to fully and completely answer Plaintiff-Relator's

-12-

Interrogatories.

**PLAINTIFF-RELATOR'S REQUESTS FOR ADMISSIONS WERE TIMELY AND PROPER.**

      **1.    Plaintiff-Relator's Requests for Admission are timely.**

Deloitte attempts to argue that Plaintiff-Relator's Requests for Admission are somehow untimely despite the fact that it is undisputed that they were served by hand-delivery (and not UPS or FedEx) to Deloitte's attorney-in-charge 32 days prior to the end of the discovery period.  Given that Plaintiff-Relator's Requests for Admissions were served in accordance with this Court's orders to serve discovery requests sufficiently prior to the discovery cut-off date so as to allow the other party time to respond, Plaintiff-Relator is at a loss to understand Deloitte's argument as to why the Plaintiff-Relator's Requests for Admissions are untimely.  Moreover, these Requests for Admissions were served only days after the completion of the deposition of Deloitte's expert and almost two months prior to the completion of the depositions of the key witnesses in this case (former Deloitte employees) who have repeatedly cancelled their scheduled depositions.[3]

      **2.    Plaintiff-Relator's Requests for Admissions Are Not Unduly Burdensome.**

Deloitte's complaint that certain of Plaintiff-Relator's Requests for Admission contain subparts is both irrelevant and disingenuous.  It is disingenuous because a review of the text of the actual Requests for Admission reveals that they can each be answered by a single admission or denial.  For example, Request for Admission No. 2 requests that Deloitte admit or deny that there were 10 separate SHARS service categories and lists them.  Deloitte argues to this Court that this constitutes 10 separate Requests for Admission.  Deloitte seeks to obscure this fact by either failing to quote the

---

[3]  The continued unavailability of these witnesses has resulted in this Court's extending the time to complete these depositions and rescheduling the cut-off date for dispositive motions.

text of the Request for Admission at issue (Request for Admission Nos. 2, 188, 415 and 422) or by

cropping the text unfairly (Request for Admission No. 294).  As confirmed by the actual text of these

requests they are all proper Requests for Admission.

2.     The SHARS services include the following service categories:
   a.    Assessment
   b.    Audiology
   c.    Counseling
   d.    Medical Services
   e.    School Health Services
   f.    Occupational Therapy
   g.    Physical Therapy
   h.    Speech Therapy
   i.    Psychological Services
   j.    Special Transportation

188.     D&T states that a time study is:

   a.    relatively complex and may result in reporting errors;
   b.    relatively resource intensive and may distract clinicians from the provision of health services;
   c.    provides a snap shot of time utilization at one period in a year, and may not be indicative of variations in time utilization that naturally occur in a school fiscal year.

294.     For Assessment Deloitte failed to include in its array data from Southeast Lubbock, Burkburnett, Lake Worth, Wood County, Little Cypress, or Connally-Lavega.

415.     On April 7, 1994 TDH accepted D&T's proposal. TDH's acceptance was expressly conditioned and required D&T to

   a.    involve Gudur in all aspects of the project;
   b.    comply with all state and federal Medicaid guidelines in developing the reimbursement rates; and
   c.    work within the guidelines of the State of Texas' existing SHARS state plan amendment to avoid the need to submit an additional state plan amendment

422.     Gudur repeatedly informed D&T personnel of his findings. In particular, Gudur met with D&T's Paul Christenson in the second quarter of 1994 to discuss his objections and concerns

about D&T's rate setting methodology, including the fact that

    a.    the Cost Data Study was flawed and inadequate;
    b.    the Indirect Cost Rate of 67% was excessive;
    c.    the Set-up and Monitoring Factor duplicated costs
          already included in the Indirect Cost Rate; and
    d.    the proposed D&T SHARS reimbursement rates were
          excessive.

As acknowledged by Deloitte, Rule 36 does not contain any limitation on the number of Requests for Admission that a party may serve.  As recognized by the courts, the reasonableness of the number of Requests for Admissions served by a party is dependent on the factual circumstances of the case at hand. Large numbers of requests are sometimes permitted in especially complex cases. In complex cases such as the present one courts have required parties to answer a far greater number of Requests for Admissions comprising a far greater amount of text than the ones at issue here.  For example, in *Photon v. Harris Intertype, Inc.*, 28 F.R.D. 327 (D. Mass. 1961), the court ordered a defendant to answer 704 Requests for Admissions that comprised 114 legal size pages.  Similarly, other courts have upheld Requests for Admissions that far exceed the limited number allowed by the local rule or some of the cases cited by Deloitte.  *See*, e.g., *Moscowitz v. Baird*, 10 F.R.D. 233 (S.D.N.Y. 1950)(allowing 267 Requests for Admissions and holding that reasonableness depends on circumstances of the case).

The present case involves a complicated rate setting project in which the rates for 10 different SHARS services were calculated by Deloitte.  The rate documentation package prepared by Deloitte is approximately 772 pages long.  It was developed from cost reports collected from a sample of 33 school districts and time survey forms collected from service providers in each category of service at six school districts.  A review of the Plaintiff-Relator's Requests for Admission confirms that Plaintiff-Relator's Requests for Admission do not seek to harass or unduly burden Deloitte but rather

-15-

to facilitate the litigation process by securing admissions as to the cost and time information utilized or omitted by Deloitte in calculating the SHARS rates. Because of the complexity and details involved, a large number of Requests for Admission are required.  These Requests for Admission serve the beneficial purpose, however, of narrowing the issues and items in contention. Deloitte's argument is also irrelevant in light of the fact that neither Rule 36 or any local rule limits the number of Requests for Admission a party may serve.

### 3.    Plaintiff-Relator's Requests for Admissions Do Not Seek Improper Information.

Deloitte cites bad 1995 case law from the Bankruptcy Division of Middle District of Florida to argue that certain of the Plaintiff-Relator's Requests for Admissions are improper because they seek "ultimate facts." While Deloitte does indicate that "some courts" allow such requests, it fails to advise the Court that included in that group are the Fifth and Eleventh Circuits. As expressly stated by the Fifth Circuit in *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001):

> "Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *See, e.g., Stubbs v. Comm'r Internal Rev.*, 797 F.2d 936, 938 (11th Cir.1986); *Campbell v. Spectrum Automation Co.,* 601 F.2d 246, 253 (6th Cir.1979).

In light of the binding precedent in this Circuit and the apparent overruling of the authority cited by Deloitte, Deloitte' objections to Requests for Admissions 81, 90, 103, 184, 351, 352, 416 and any other Requests for Admission objected to on similar grounds must be overruled. Plaintiff-Relator also points out that Deloitte's repeated failure to reference the relevant Fifth Circuit decisions both here and in connection with regard to its objections to the Plaintiff-Relator's interrogatories has resulted in the waste of the resources of both the Court and the Plaintiff-Relator.

In a further attempt to mislead this Court into the erroneous belief that Requests for Admissions 477 -485 did not relate to SHARS and were seeking information irrelevant to the present litigation, Deloitte states that Requests for Admissions 477 through 485 all relate to the MAC program and are therefore improper but departs from its practice of quoting the text of the Requests for Admissions.  In failing to refer to the text of the challenged Requests for Admissions, Deloitte obscures the fact that these Requests for Admissions are actually related to SHARS and the information they seek is essential to the Plaintiff-Relator's case.  Moreover, the Requests for Admission highlight why certain MAC information is critical to Plaintiff-Relator's SHARS claims The challenged Requests for Admission are:

477.   At the same time Deloitte was conducting the time survey, time studies were being conducted by some of Deloitte's clients for the MAC program.

478.   Deloitte participated in the planning of the MAC time studies.

479.   Deloitte participated in the conduct of the MAC time studies.

480.   The MAC time studies produced data inconsistent with Deloitte's time survey.

481.   Deloitte was aware of the discrepancies between the MAC time study data and the SHARS time survey data.

482.   The MAC time studies that were conducted were far more reliable than the time survey conducted by Deloitte.

483.   All of the time survey participants also participated in the MAC time study effort.

484.   The MAC time studies collected SHARS data.

485.   The data from the MAC time studies would have determined the average time allocations that Deloitte's time survey sought to determine.

By propounding these Requests for Admissions, Plaintiff-Relator properly seeks to establish that 1) at the same time Deloitte was arguing that a time study was to difficult to perform and that it should therefore perform a less involved time survey, Deloitte and its clients were performing just such a time study; 2) the SHARS time survey and MAC time study both collected SHARS calculated time information; 3) the SHARS time information collected by the SHARS time survey and MAC time study were inconsistent; 4) even through the SHARS information collected by the MAC time studies was more reliable than the SHARS time survey data Deloitte chose to use the inconsistent less reliable time survey data to calculate the SHARS rates; 5) all of the time studies data required to be calculate the SHARS rates could have been obtained from the more detailed MAC forms. Similarly in his Requests for Admissions Plaintiff-Relator sought to establish that Deloitte's SHARS rates duplicated costs being billed under the MAC program and thus were in violation of the Texas state Medicaid plan and state and federal Medicaid regulations.

By quoting certain Requests for Admissions out of context, Deloitte disingenuously argues that certain terms contained within the Requests for Admissions are vague and ambiguous. While the Requests for Admissions are not vague and ambiguous when combined with the immediately preceding Requests for Admission, a review of the challenged Requests for Admission confirms that any possible complaint can be cured by the insertion of the phrase "reporting of zero as the unit cost described in the previous Requests for Admission" after the initial word "this." See, e.g. Requests for Admissions 115, 116, 122, 123, 135, and 136. Similarly the addition of the phrase "described in the previous Requests for Admission" to Requests for Admissions 68, 85, 88, and 152 negates any possible ambiguity complained of by Deloitte. In a similar vein, while Plaintiff-Relator believes that Requests for Admission 213 - 217 are clear in their requests for an admission that the entries on various time survey forms utilized by Deloitte to calculate the SHARS rate do not foot or add up

-18-

when totaled, the addition of the word "up" after the word "add" at the end of Requests for

Admission 213 - 217 or in the alternative the substitution of the word "foot" for the word "add"

would eliminate any possible complaint voiced by Deloitte.

Deloitte also complains that it cannot understand Requests for Admissions 58 or 200.

Plaintiff-Relator submits that these Requests for Admissions are clear on their face.  Similarly

Deloitte claims that certain Requests for Admissions are nonsensical.  It appears that Deloitte seeks

to capitalize on several typos (most contained on a single page - Requests for Admissions 28 - 35)

to avoid answering Plaintiff-Relator's legitimate discovery requests.  Plaintiff-Relator submits that

the typos are obvious (and unfortunate), and they do not render the meaning of the particular

Requests for Admission nonsensical as the typo either results in an obvious word like SHARS being

rendered as SEARS (Request for Admission No. 13) or a phrase like "information was" being

repeated unnecessarily (Requests for Admission Nos. 31, 33 -35).  Corrected, the Requests for

Admissions should read:

> 13.    Bankard asserted in his March 21, 1994 to TDH that the existing SHARS rates were lower than the actual costs of performing SHARS.

> 28.    The cost report information used by Deloitte information was statistically flawed.

> 29.    The cost report information used by Deloitte used a sample size that was too small and not representative.

> 30.    The cost report information used by Deloitte was incomplete, inaccurate and consisted of un-audited data.

> 31.    The cost report information used by Deloitte did not address required allocation issues.

> 32.    The cost report information used by Deloitte contained extreme variances which indicated the need for multiple rates.

33.     The cost report information used by Deloitte did not address contractor vs. employee indirect cost issues.

34.     The cost report information used by Deloitte did not distinguish between high cost and low cost providers.

35.     The cost report information used by Deloitte contained errors.

While any typographical errors or ambiguities could have been easily dealt with had Deloitte chosen to bring these issues to the attention of Plaintiff-Relator's counsel, Deloitte chose not to confer in good faith to resolve any perceived ambiguities but rather adopted the unreasonable position that all of the Plaintiff-Relator's Requests for Admissions were improper without further elaboration.

Deloitte's other complaints are equally unavailing. Deloitte's complaint that the majority of the Requests for Admissions are based on Plaintiff-Relator's expert report is both untrue and irrelevant, and Deloitte cites no case law on point to the contrary. Similarly Deloitte's complaint that it is improper to require it to admit to the authenticity of certain documents is contrary to the express language of Fed.R.Civ.P. 36 which states that a party may serve a Request for Admission for the purpose of seeking to establish the "genuineness of any documents described in the request." If Deloitte cannot truthfully admit or deny the genuineness of a particular document, it can so indicate in its response as Fed.R.Civ.P. 36 provides.

**CONCLUSION.**

In light of the above, Deloitte's Motion for Protective Order should be denied in all respects.

Respectfully submitted,


*/s/ Michael W. Kerensky*

Michael W. Kerensky
State Bar No. 11331500
The Kerensky Law Firm
5300 Memorial, Suite 950
Houston, Texas 77007
Telephone:  (713) 522-8686
Facsimile:  (713) 522-6925

ATTORNEYS FOR PLAINTIFF-RELATOR

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2006, a true and correct copy of the above and foregoing *Plaintiff-Relator's Opposition to Defendant Deloitte Consulting LLP's Motion for Protective Order* was served on Defendants by and through their attorneys of record, as listed below via electronic notification and/or facsimile and/or United States First Class Mail.

/s/ Michael W. Kerensky

Bridget Robinson
Todd A. Clark
Walsh, Anderson, Brown, Schulze & Aldridge, P.C.
6300 La Calma, Suite 200
Austin, Texas 78752
Via Fax: (512) 467-9318
*Attorneys in Charge for Northside ISD*

Richard A. Morris
Paul A. Lamp
Feldman & Rogers, L.L.P.
5718 Westheimer, Suite 1200
Houston, Texas 77057
Via Fax: (713) 960-6025
*Attorneys in Charge for Houston ISD, Northeast ISD, and Dickinson ISD*

Eric V. Moyé
Dawn Kahle Doherty
Richard E. Aubin
Vial, Hamilton, Koch & Knox, L.L.P.
1700 Pacific Avenue, Suite 2800
Dallas, Texas 75201
Via Fax: (214) 712-4402
*Attorneys in Charge for Dallas ISD*

Joseph R. Knight
Scott D. Powers
Baker Botts, L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4287
Via Fax: (512) 322-8322
*Attorneys in Charge for Deloitte and Touche*

Evan Tilton
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Via Fax: (214) 698-3400
*Co-Counsel for Deloitte & Touche*

F. Joseph Warin
Gibson, Dunn & Crutcher LLP
Washington Square
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Via Fax: (202) 467-0539
*Co-Counsel for Deloitte & Touche*

Robert C. Blume
Gibson, Dunn & Crutcher LLP
1801 California Street, Suite 4200
Denver, Colorado 80202
Via Fax: (303) 313-2870
*Co-Counsel for Deloitte & Touche*

David F. Chappell
Cynthia L. Hill
Chappell, Hill & Lowrance, L.L.P.
2501 Parkview Drive, Suite 220
Fort Worth, Texas 76102
Via Fax: (817) 332-1956
*Attorneys in Charge for Fort Worth ISD*

Barry L. Wertz
Jonathan D. Baughman
McGinnis, Lochridge & Kilgore, LLP
1221 McKinney, Suite 3200
Houston, Texas 77010
Via Fax: (713) 615-8585
*Attorneys in Charge for Spring Branch ISD*

Kevin Aiman
Assistant U. S. Attorney
U. S. Department of Justice
P.O. Box 31129
Houston, Texas 77208-1129
Via Fax: (713) 718-3303
*Attorney in Charge for Plaintiff United States*